OPINION
{¶ 1} Appellant, Victoria Lopshire, appeals from the March 25, 2005 judgment entry of the Portage County Municipal Court, Kent Division, in which she was sentenced for criminal damaging.
 {¶ 2} On June 3, 2004, a complaint was filed against appellant charging her with one count of criminal damaging, a misdemeanor of the second degree, in violation of R.C.2909.06(A)(1). On June 24, 2004, appellant entered a plea of not guilty at her initial appearance.
 {¶ 3} A jury trial commenced on December 6, 2004.
 {¶ 4} At the trial, Bert Allen Prisby ("Prisby"), testified for appellee, the state of Ohio, that he had contact with appellant, his aunt, on May 19, 2004. According to Prisby, he was at his grandmother's house when he received a telephone call from appellant. Prisby stated that appellant yelled and cursed at him, as well as accused him of "taking" from his grandmother, specifically eating some lunchmeat. Prisby told appellant that he did not know what she was talking about, and said that he was going to get off the phone and go watch a game at the Ravenna Men's Civic Club ("club"), located in Ravenna, Portage County, Ohio. After he arrived at the club, he sat at the bar and ordered a beer. Within twenty-five minutes, appellant arrived at the club, walked toward Prisby, accused him of taking things from his grandmother's house, and an argument ensued. Prisby thought that appellant seemed to be intoxicated.
 {¶ 5} Approximately three minutes later, Prisby walked away and went to the restroom. While inside the restroom, Prisby looked out the open window while talking on his cell phone to a friend of his in Akron. He indicated that it was dusk, but that the parking lot was very well lit where he always parks his vehicle. Prisby saw appellant "standing or walking" around his car, specifically the driver's side. On his way home, Prisby noticed scratches on his vehicle with the word "bitch" written on the front and back of his car. He explained that the doors of his vehicle were scratched, as if a person walked along his car and ran a key down the side. Hoping that the matter could be resolved by the family with his grandmother's assistance, he went to her house. Prisby waited six or seven hours before reporting the incident to the police.
 {¶ 6} On cross-examination, Prisby stated that he parked his car in front of the men's restroom. He said that there were about ten people in the club when he arrived. When appellant came to the club, she sat down at the bar. Prisby indicated that a patron told him that appellant wanted to talk to him, so he walked over to her. Prisby testified that appellant again accused him of draining his grandmother's resources. He stuck his hand out which caused appellant to lose her balance and almost fall backward. Prisby then went to the men's restroom. He did not actually see appellant damage his car, but he saw her around it.
 {¶ 7} Officer Craig Wilmington ("Officer Wilmington"), with the Ravenna City Police Department at the time of the incident, testified for appellee that shortly after the encounter, he received a call from appellant regarding Prisby assaulting her. The following day, Officer Wilmington took a report from Prisby, and later photographed his vehicle.
 {¶ 8} At the close of appellee's case, appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.
 {¶ 9} Louis King ("King"), a bartender at the club, testified for appellant that both appellant and Prisby were already at the club when he arrived at work. King served Prisby two beers while he was on duty. He saw and overheard appellant and Prisby arguing about Prisby's grandmother. King never witnessed Prisby touch appellant in any manner. He told both of them to quit arguing or he would throw them out. According to King, appellant said she was leaving, slid her drink to King, which spilled on him. King went to the men's restroom. He viewed appellant from the window head toward the street, then down an alley. King did not see appellant go near Prisby's vehicle. After King left the restroom, Prisby went into the men's room for about ten to fifteen minutes, then went outside. King entered the men's restroom again to observe Prisby outside. He saw Prisby sitting inside his vehicle, then he came back into the club. Prisby did not mention anything unusual to King after he came back inside.
 {¶ 10} According to appellant, she had a phone conversation with Prisby regarding his grandmother. She said that she had a couple of alcoholic drinks before she walked to the club to let Prisby know that it was not okay for him to abuse her mother's resources. At the club, appellant indicated that Prisby approached her and an argument ensued. After almost being knocked down, she left the club and walked home. She began first to walk the longer well-lit route to her house, then changed her mind and opted for the quicker dimly lit alley. Appellant stated that she did not know where Prisby's vehicle was parked, nor did she do any damage to it. After she arrived home, she contacted the police.
 {¶ 11} On cross-examination, appellant stated that she went to the club to confront Prisby because she was very upset with him. She never filed a criminal complaint for assault against Prisby.
 {¶ 12} At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion, which was overruled by the trial court.
 {¶ 13} On December 7, 2004, the jury returned a verdict of guilty. On February 10, 2005, appellant filed a motion to set aside the verdict, which was overruled by the trial court.
 {¶ 14} Pursuant to its March 25, 2005 judgment entry, the trial court sentenced appellant to thirty days in jail, thirty days suspended, and ordered her to pay restitution. Appellant's sentence was stayed pending appeal. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 15} "[1.] The trial court erred to the prejudice of appellant, by denying appellant's [Crim.R.] 29 motions for acquittal and motion to set aside verdict when the evidence was insufficient to sustain a conviction for criminal damaging.
 {¶ 16} "[2.] Appellant was prejudiced by ineffective assistance of counsel, when trial counsel failed to conduct research to support with law the [Crim.R.] 29 motions for acquittal and motion to set aside the verdict."
 {¶ 17} In her first assignment of error, appellant argues that the trial court erred by denying her Crim.R. 29 motions for acquittal and motion to set aside the verdict because the evidence was insufficient to sustain a conviction for criminal damaging. In addition, appellant asserts that her conviction was against the manifest weight of the evidence.
 {¶ 18} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Supreme Court stated that: "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." State v.Patrick, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, at ¶ 18.
 {¶ 19} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 20} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 21} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'
 {¶ 22} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 23} "* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 24} With regard to manifest weight, this court stated inSchlee, supra, at 14-15:
 {¶ 25} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 26} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 27} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 28} In the instant matter, appellant is challenging her R.C. 2909.06(A)(1) criminal damaging conviction, which provides: "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means[.]"
 {¶ 29} In finding appellant guilty of criminal damaging, the jury was required to find that appellee had proven beyond a reasonable doubt that she acted knowingly. R.C. 2901.22(B) states: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 30} Here, Prisby testified that after arguing with appellant on the phone at his grandmother's house, he went to the club where appellant also showed up, and another argument ensued. Again, Prisby indicated that he went to the men's restroom, looked out of the window, and saw appellant standing or walking around his car, specifically by the driver's side of his vehicle. When Prisby went outside, he saw scratches with the word "bitch" written on the front and back of his car. The doors of his vehicle were scratched, as if someone walked by and ran a key down the side of his car. Prisby's vehicle was not scratched, nor was any profanity written on it, before he arrived at the club. Also, he did not give anyone permission to damage his vehicle.
 {¶ 31} The foregoing damage satisfies the definition of physical harm to property. R.C. 2901.01(A)(4). In addition, appellant's knowledge can be ascertained from the surrounding facts and circumstances of the night at issue. See State v.Johnson (1978), 56 Ohio St.2d 35, 38, citing State v. Huffman
(1936), 131 Ohio St. 27, paragraph four of the syllabus.
 {¶ 32} We note that appellee could not put on direct evidence that appellant was actually seen "keying" Prisby's car. However, the law does not require such a high standard of proof. State v.Williams, 7th Dist. No. 04 MA 38, 2005-Ohio-4762, at ¶ 23. "If that were so, convictions for crimes without eyewitnesses would never be upheld." Id. Thus, the Supreme Court of Ohio held inJenks, supra, paragraph one of the syllabus: "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."
 {¶ 33} Pursuant to Schlee, supra, considering the evidence in a light most favorable to the prosecution, the jury could have found appellant guilty of criminal damaging beyond a reasonable doubt.
 {¶ 34} With respect to appellant's assertion that her conviction was against the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Here, the jury chose to believe Prisby rather than appellant. Based on the evidence presented, we cannot say that the jury clearly lost its way in finding appellant guilty of criminal damaging. See Williams,
supra, at ¶ 22-24; State v. Howdyshell (Aug. 15, 1997), 11th Dist. No. 96-A-0064, 1997 Ohio App. LEXIS 3673, at 5 (holding that the trial court did not clearly lose its way in finding appellant guilty of criminal damaging where a witness saw the appellant walk from the back bumper to the front bumper of the victim's car, and the following day, the victim noticed key marks on her vehicle).
 {¶ 35} Appellant's first assignment of error is without merit.
 {¶ 36} In her second assignment of error, appellant alleges that she was prejudiced by the ineffective assistance of her counsel. She stresses that her counsel failed to conduct research to support with law the Crim.R. 29 motions for acquittal and motion to set aside the verdict.
 {¶ 37} "In reviewing a claim of ineffective assistance of counsel, there exists a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Mick (Sept. 7, 1990), 11th Dist. No. 88-T-4088, 1990 Ohio App. LEXIS 3908, at 5, citing State v.Post (1987), 32 Ohio St.3d 380. "Mere inexperience or unskillfulness, mistakes or errors of judgment, and improper trial strategy in connection with the case are ordinarily insufficient to justify setting aside a judgment of conviction because of the claimed incompetency of retained counsel for the accused." State v. Peoples (1971), 28 Ohio App.2d 162, paragraph five of the syllabus. "The judgment of conviction is void where retained counsel's representation has been so inadequate as to make the trial a farce and a mockery of justice, thereby denying the accused of a fair trial (due process of law) or invading his constitutional right to the effective assistance of counsel." Id., paragraph six of the syllabus.
 {¶ 38} Strickland v. Washington (1984), 466 U.S. 668, 687
states:
 {¶ 39} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 40} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 41} In the case at bar, appellant's counsel raised the Crim.R. 29 motions in a timely manner. Based on Strickland,
supra, appellant has failed to demonstrate that her counsel was deficient, or that such deficiency resulted in prejudice to her. Appellant has not shown, pursuant to Bradley, supra, that but for her counsel's claimed unprofessional errors, the result of the proceeding would have been different. Even assuming that appellant's counsel made a professionally unreasonable error by not citing case law in the Crim.R. 29 motions and/or motion to set aside the verdict, that does not warrant setting aside the judgment since the "error," if any, had no effect on the judgment. See Bradley, supra, at 142.
 {¶ 42} Appellant's second assignment of error is without merit.
 {¶ 43} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Municipal Court, Kent Division, is affirmed.
O'Neill, J., Rice, J., concur.