[Cite as *State v. Ernest*, 2015-Ohio-2983.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-108** |
| CHAUNTON C. ERNEST, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000082.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Alana A. Rezaee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, Ohio 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Chaunton C. Ernest, appeals from the September 30, 2014 judgment of the Lake County Court of Common Pleas, sentencing him for attempted murder and other related crimes. On appeal, appellant argues his Crim.R. 29(A) motion for acquittal should have been granted; his convictions are against the manifest weight

of the evidence; and his 11-year term of imprisonment is excessive. For the reasons that follow, we affirm.

{¶2} On March 26, 2014, appellant was indicted by the Lake County Grand Jury on ten counts: count one, attempted murder, a felony of the first degree, in violation of R.C. 2923.02, with a firearm specification; count two, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2); count three, obstructing justice, a felony of the third degree, in violation of R.C. 2921.32(A)(2); count four, complicity to felonious assault, a felony of the second degree, in violation of R.C. 2923.03(A)(2), with a firearm specification; counts five and seven, improperly handling firearms in a motor vehicle, felonies of the fourth degree, in violation of R.C. 2923.16(B); count six, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(1); count eight, improperly discharging a firearm at or into a habitation or school safety zone, a felony of the second degree, in violation of R.C. 2923.161(A)(1), with a firearm specification; count nine, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2), with a firearm specification; and count ten, engaging in a pattern of corrupt activity, a felony of the first degree, in violation of R.C. 2923.32(A)(1).

{¶3} Appellant was appointed counsel. He filed a waiver of the right to be present at his arraignment and a waiver of his right to a speedy trial. On March 28, 2014, the trial court entered a not guilty plea to all charges on his behalf.

{¶4} Prior to trial, appellee, the state of Ohio, moved to dismiss counts eight, nine, and ten. The trial court granted the state's motion and dismissed those three counts.

{¶5} A bench trial commenced on August 26, 2014. At trial, the state presented 20 witnesses and over 65 exhibits. Appellant testified on his own behalf but presented no additional witnesses.

{¶6} Collectively, the testimony presented reveals appellant's involvement in several criminal incidents that spanned a two-day time period in January 2014 in Lake and Ashtabula counties.[1] On January 11, 2014, appellant, his Uncle Ginelli Ernest ("Ginelli"), and Mike Williams ("Williams") were together at appellant's grandmother's home at Edgewood Club Apartments in Painesville, Lake County, Ohio. The apartment complex is monitored by video surveillance. The three men left the complex and got into a red Toyota Camry. Appellant was in the driver's seat, Ginelli in the front passenger seat, and Williams in the back seat.

{¶7} At that point, they saw Aaron Thomas ("Thomas") walking on Elevator Street. Ginelli told appellant to pull alongside Thomas so that Ginelli could confront Thomas regarding an incident which occurred the previous day where Thomas allegedly struck Ginelli's sister. Both appellant and Ginelli were upset with Thomas for getting into a fight with their family member.

{¶8} Following a brief conversation, Thomas began walking away. Ginelli was apparently not finished speaking with Thomas and he ordered appellant to back up alongside Thomas again. At that time, Williams stuck a .40 caliber semi-automatic rifle out of the backseat window which caused Thomas to flee. Ginelli and Williams jumped out of the car and chased after Thomas on foot while appellant drove after Thomas at a high rate of speed. After pulling in front of Thomas, appellant stopped the car and got

---

1. The main facts are presented here. Additional facts will be addressed under appellant's first assignment of error which involves a sufficiency of the evidence argument.

out. At that point, Williams began firing gunshots at Thomas. Some of the bullets ended up hitting a nearby Ford Explorer owned by Carol Ann Eder.

{¶9} Thereafter, Ginelli and Williams returned to the Camry and appellant drove back to Edgewood Club Apartments. Appellant allowed Williams back into his grandmother's apartment. Appellant stayed at the entrance of the apartment complex until police arrived in response to 9-1-1 calls made regarding the shooting. Appellant eventually admitted to a police officer that he had driven the vehicle. Appellant agreed to go to the station for questioning.

{¶10} During an interview, appellant provided authorities with details of the shooting. Appellant claimed he did not know Williams had a gun in the car. Appellant also claimed he did not know the location of Williams or the gun at the time of the interview.

{¶11} The next day, January 12, 2014, appellant was driving an SUV in Ashtabula County. Ginelli was the front seat passenger and Williams was the back seat passenger. A police officer pulled the SUV over due to a malfunctioning rear license plate light. After approaching the vehicle with the three men and in light of the previous day's shooting in Lake County, the officer radioed for back up assistance. Williams immediately fled the SUV. Appellant and Ginelli were placed in separate patrol cars while the SUV was searched. A .40 caliber semi-automatic rifle, later identified as the same rifle used in the January 11, 2014 shooting, was discovered on the rear floor of the SUV. The rifle measured nearly three-feet long. Forensic testing later confirmed that the seven spent cartridges recovered from the crime scene were fired from the rifle in question.

4

{¶12} Defense counsel moved for acquittal, pursuant to Crim.R. 29(A), at the close of the state's case and after all the evidence, which was denied by the trial court.

{¶13} Following trial, the court returned its verdict and found appellant guilty as charged on counts one and three through seven. The court found appellant not guilty on count two. The court referred the matter to the Adult Probation Department for a pre-sentence investigation and report, a victim impact statement, and DNA testing. Sentencing was deferred.

{¶14} Appellant filed a motion for new trial pursuant to Crim.R. 33(A)(4). The state opposed the motion. The trial court denied appellant's motion on September 23, 2014.

{¶15} On September 30, 2014, the trial court merged count four into count one and count seven into count six. The court sentenced appellant to seven years in prison on count one; nine months on count three; 12 months on count five; and 12 months on count six. The sentences imposed in counts one, three, and five were ordered to be served concurrent with each other and consecutive to the sentence imposed in count six. Appellant was ordered to serve an additional mandatory prison term of three years for the firearm specification, prior to and consecutive to the foregoing prison term, for a total of 11 years. Appellant received 246 days of credit for time already served. The court further notified appellant that post-release is mandatory for five years. Appellant filed a timely appeal and raises the following three assignments of error for our review:

{¶16} "[1.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

5

{¶17} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶18} "[3.] The trial court erred by sentencing the defendant-appellant to an excessive, consecutive, eleven-year term of imprisonment."

{¶19} In his first assignment of error, appellant argues the trial court erred in denying his Crim.R. 29(A) motion for acquittal on all charges.

{¶20} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶21} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶22} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while 'manifest weight' contests the believability of the evidence presented.

{¶23} "" * * * The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the

6

offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

{¶24} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a [guilty] verdict where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶25} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶26} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra,* paragraph one of the syllabus.

{¶27} In this case, appellant challenges his convictions on all counts: count one (attempted murder); count three (obstructing justice); count four (complicity to felonious assault); counts five and seven (improperly handling firearms in a motor vehicle); and count six (carrying concealed weapons). Upon review, we find sufficient evidence to support convictions on all counts. We note again that the trial court merged count four, with a firearm specification, into count one. The trial court also merged count seven into count six. Thus, this court will specifically address the evidence presented supporting appellant's convictions on counts one, three, five, and six.

{¶28} Appellant's convictions and the evidence presented are viewed under a complicity theory. Before finding appellant guilty, the trial court was to consider whether appellant "aided or abetted" another in the commission of the offenses. "'Aided or abetted' means supported, assisted, encouraged, cooperated with, advised, or incited." OJI 523.03; *see also State v. Sims*, 11th Dist. Lake No. 2001-L-081, 2003-Ohio-324, ¶44.

{¶29} Appellant correctly notes that the mere presence of an individual at the scene of a crime does not prove that someone is an accomplice. "Rather, the state must establish that the offender 'took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture.'" *Sims*, *supra*, at ¶44, quoting *State v. Mootispaw*, 110 Ohio App.3d 566, 570 (4th Dist.1996). "'[T]he state may demonstrate a person's aiding and abetting of another in the commission of a crime through both direct and circumstantial evidence.'" *Sims* at ¶45, quoting *Mootispaw* at 570. "'"Criminal intent may be inferred from presence, companionship

8

and conduct before and after the offense is committed.""" *Id.*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971).

**{¶30}** Appellant does not dispute that he was present at the scene of the crime. However, appellant claims he was unaware of Williams' intent and had no knowledge there was a rifle in the car.

**{¶31}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "[K]nowledge can be ascertained from the surrounding facts and circumstances." *State v. Lopshire*, 11th Dist. Portage No. 2005-P-0037, 2006-Ohio-3215, ¶31. "Even when a defendant testifies as to his lack of knowledge, a trier of fact may disbelieve his testimony and examine the surrounding facts and circumstances to determine whether the defendant possessed 'knowledge.'" *State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, ¶36.

**{¶32}** Under count one, in order to have found appellant guilty of attempted murder, the state was required to prove that appellant aided and abetted his codefendants (Ginelli and/or Williams) by knowingly engaging in conduct that, if successful, would result in the death of another (Thomas) as a proximate result of committing felonious assault. *See* R.C. 2923.02(A) (attempt); R.C. 2923.03(A) (complicity); R.C. 2903.02(B) (murder); R.C. 2903.11(A)(2) (felonious assault).

**{¶33}** The surrounding facts and circumstances in this case support the state's position and the trial court's conclusion that appellant aided and abetted Ginelli and

9

Williams in attempting to cause Thomas' death by attempting to inflict physical harm by means of a deadly weapon.

{¶34} Appellant admitted he and Ginelli were upset with Thomas for getting into a fight with their family member. The weapon at issue was a .40 caliber semi-automatic rifle that measured nearly three-feet long. Appellant was present when the rifle was purchased. Appellant observed Williams posing with the rifle for photos immediately prior to the shooting. Appellant also observed Williams "walking funny" when they went to the car.

{¶35} When appellant, Ginelli, and Williams saw Thomas around the apartment complex, appellant pulled the car alongside him. Words were exchanged and Williams stuck the rifle out of the backseat window which caused Thomas to flee. The exchange was captured on video surveillance.

{¶36} Ginelli and Williams jumped out of the car and chased after Thomas on foot while appellant drove after Thomas at a high rate of speed. An eyewitness, Joseph Forristal ("Forristal"), testified for the state that "[a]s soon as he [Thomas] started running backwards, the red car came racing towards him looking like it was going to try and run him down." Forristal stated that he "was really afraid it [the vehicle driven by appellant] was trying to kill him [Thomas] because it was – I mean it just aimed right towards him."

{¶37} After pulling in front of Thomas, appellant stopped his car and got out. At that point, Williams began firing gunshots at Thomas. Thereafter, appellant, Ginelli, and Williams drove back to Edgewood Club Apartments. Appellant allowed Williams back into his grandmother's apartment. Appellant stayed at the entrance of the apartment

10

complex until police arrived. A resident at the apartment, Cheryl Ann Thompson, testified for the state that she saw Thomas running and heard him say "'[t]hey're trying to kill me.'" Another witness in the vicinity, Larry Luckey, testified for the state that he saw Thomas running and heard him say "'[t]hey're trying to shoot me.'"

{¶38} In addition, forensic testing confirmed that the seven spent cartridges recovered from the crime scene were fired from the .40 caliber semi-automatic rifle in question. Officer Roberto Soto testified for the state that a gun residue sample was conducted from the rifle and from appellant's hands. Donna Schwesinger, a forensic scientist with BCI, testified for the state that "'[p]articles highly indicative of gunshot primer residue were identified on the samples from Chaunton C. Ernest [appellant].'"

{¶39} The direct and circumstantial evidence reveals appellant aided and abetted Ginelli and Williams in an attempt to murder Thomas with a deadly weapon. Appellant's presence, companionship, and conduct before and after the offense was committed renders him an aider and abettor. Accordingly, the surrounding facts and circumstances establish a finding that appellant possessed the requisite knowledge to support a conviction for attempted murder under a theory of complicity under count one.

{¶40} Under count three, in order to have found appellant guilty of obstructing justice, the state was required to prove that appellant "with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, * * * [p]rovide[ed] the other person with * * * other means of avoiding discovery or apprehension." R.C. 2921.32(A)(2). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of

11

a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶41} After the shooting, video surveillance from the apartment complex revealed the following: appellant parked the vehicle; appellant and Williams went to the door of the building; appellant punched a code into the key pad to let himself and Williams inside; appellant escorted Williams into his grandmother's apartment and let him inside; appellant then acted as a "look out" by talking on his phone, walking the parking lot of the apartment complex, and standing in the vestibule area of the building; after police arrived, appellant initially denied having any knowledge of the shooting; and appellant never told police that he let the shooter (Williams) inside his grandmother's apartment.

{¶42} During his interview at the station, appellant initially denied knowing the name of the shooter. Appellant indicated to the police that he had told "the dude" to leave the apartment and that he complied. However, video surveillance did not show Williams leaving the apartment building until hours after the shooting. The surrounding facts and circumstances establish a finding that appellant possessed the requisite purpose to support a conviction for obstructing justice under count three.

{¶43} Under count five, in order to have found appellant guilty of improperly handling firearms in a motor vehicle, the state was required to prove that appellant "knowingly transport[ed] or [had] a loaded firearm in a motor vehicle in such a manner that the firearm [was] accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B).

12

{¶44} Appellant admitted to being aware that the .40 caliber semi-automatic rifle had been purchased and placed in the trunk of the car on the night prior to the incident at issue. In fact, an eyewitness, Johnny Rivers, saw appellant when the rifle was purchased and placed in the trunk. The following day, appellant, Ginelli, and Williams drove in the vehicle from Ashtabula to Painesville. Video surveillance of the apartment complex showed the three men entering and exiting, with Williams walking with a stiff leg and holding his hand at his side.

{¶45} Just prior to the shooting, appellant admitted to being present inside his grandmother's apartment with Ginelli and Williams when they took photos with the rifle. A neighbor, Eliza Villanueva, testified for the state, confirming that appellant was present when Williams pulled out the rifle and took a picture with it. Alecia Clinard knew all three men and testified for the state that she saw the photo of Williams with the rifle posted on "a friend's" (appellant's) Instagram account.

{¶46} During his interview with police, appellant admitted to wondering why Williams was "walking funny." Appellant also admitted to knowing Williams as "a shooter" and that Williams "don't play no games." The surrounding facts and circumstances establish a finding that appellant possessed the requisite knowledge to support a conviction for improperly handling firearms in a motor vehicle under count five.

{¶47} Under count six, in order to have found appellant guilty of carrying concealed weapons, the state was required to prove that appellant "knowingly carr[ied] or [had], concealed on the person's person or concealed ready at hand * * * [a] deadly

13

weapon other than a handgun," to wit: a .40 caliber semi-automatic rifle.    R.C. 2923.12(A)(1).

{¶48}  As addressed, it is implausible to believe appellant's claims that he was unaware that a nearly three-foot long rifle, which he had been in the presence of the day before the shooting with the same individuals, was inside of the vehicle he was driving. Officer Wayne Howell testified for the state that appellant told him that Williams had the loaded rifle in the back seat.  The rifle was found on the floor of the back seat where Williams' feet would have been.  Also, Lieutenant Chad Brown, who collected the rifle from the vehicle, testified for the state that the rifle was "ready at hand for anybody in the car."  Again, appellant was the driver of the vehicle.  The surrounding facts and circumstances establish a finding that appellant possessed the requisite knowledge to support a conviction for carrying concealed weapons under count six.

{¶49}  Pursuant to *Schlee, supra*, the state presented sufficient evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that all the elements were proven.  Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶50}  Appellant's first assignment of error is without merit.

{¶51}  In his second assignment of error, appellant contends the guilty verdict is against the manifest weight of the evidence.

{¶52}  This court stated in *Schlee, supra*, at *14-15:

{¶53}  "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

14

**{¶54}** "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"'" (Citations omitted.) * * *" (Emphasis sic.)

**{¶55}** A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶56}** With respect to the manifest weight of the evidence, the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶57}** In reviewing and weighing all the evidence presented, we determine that a trier of fact could reasonably conclude appellant was guilty of the charged offenses. The trier of fact heard all of the evidence presented by the state and its 20 witnesses, as addressed above, establishing appellant's guilt for all the crimes committed. The trier of fact also heard the defense's theory, and from appellant himself, who alleged having no knowledge of anything that was going on and merely being in the wrong place at the wrong time. The trier of fact apparently placed great weight on and chose to believe the state's witnesses as opposed to appellant. *DeHass, supra*, at paragraph one of the syllabus. We cannot say the trier of fact clearly lost its way in finding appellant guilty of the crimes at issue. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

15

**{¶58}** Appellant's second assignment of error is without merit.

**{¶59}** In his third assignment of error, appellant alleges the trial court erred in sentencing him to an excessive, consecutive, 11-year term of imprisonment. Appellant asserts the trial court failed to give adequate consideration to the R.C. 2929.12 factors.

**{¶60}** R.C. 2953.08(G) and the clear and convincing standard should be applied to determine whether a felony sentence is contrary to law. *See, e.g., State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶10; *State v. Drobny*, 8th Dist. Cuyahoga No. 98404, 2013-Ohio-937, ¶5, fn.2; *State v. Kinstle*, 3rd Dist. Allen No. 1-11-45, 2012-Ohio-5952, ¶47; *State v. Cochran*, 10th Dist. Franklin No. 11AP-408, 2012-Ohio-5899, ¶52.

**{¶61}** In reviewing a felony sentence, R.C. 2953.08(G) provides:

**{¶62}** "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶63}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶64}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

16

**{¶65}** "(b) That the sentence is otherwise contrary to law."

**{¶66}** Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

**{¶67}** Under H.B. 86, pursuant to the principles and purposes of sentencing, R.C. 2929.11 provides: "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender *using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources*." R.C. 2929.11(A). (Emphasis added.) Thus, the legislature has given us the tools as well as a mandate to address the issues of keeping dangerous criminals off the street, while balancing Ohio's financial deficits and an already overcrowded prison system.

**{¶68}** The guidelines contained in R.C. 2929.12, specifically at (E), state:

**{¶69}** "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

**{¶70}** "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

**{¶71}** "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

**{¶72}** "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

**{¶73}** "(4) The offense was committed under circumstances not likely to recur.

{¶74} "(5) The offender shows genuine remorse for the offense."[2]

{¶75} This is not a case where the trial court failed to merge allied offenses of similar import. Rather, as stated, appellant was found guilty of the following: count one, attempted murder, a felony of the first degree, in violation of R.C. 2923.02, with a firearm specification; count three, obstructing justice, a felony of the third degree, in violation of R.C. 2921.32(A)(2); count four, complicity to felonious assault, a felony of the second degree, in violation of R.C. 2923.03(A)(2), with a firearm specification; counts five and seven, improperly handling firearms in a motor vehicle, felonies of the fourth degree, in violation of R.C. 2923.16(B); and count six, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(1). The trial court found the offenses were committed with the same animus and were allied offenses of similar import, pursuant to R.C. 2941.25. Thus, the court merged count four, with a firearm specification, into count one. The court also merged count seven into count six.

{¶76} This is also not a case where the defendant received the maximum sentence. Specifically, appellant's sentence of seven years in prison on count one is within the statutory range. *See* R.C. 2929.14(A)(1) ("[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years.") Appellant's sentence of nine months in prison on count three is within the statutory range. *See* R.C. 2929.14(A)(3)(b) ("[f]or a felony of the third degree * * * the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.") In addition, appellant's sentences of 12 months in prison on counts five and six are within the statutory ranges. *See* R.C. 2929.14(A)(4) ("[f]or a felony of the fourth degree, the prison

2. *See* R.C. 2929.12(A)-(E) (for a complete list of all factors).

18

term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.")

**{¶77}** At the sentencing hearing, the trial court gave careful and substantial deliberation to the relevant statutory considerations. Specifically, the trial judge stated the following:

**{¶78}** "Well, this Court did review the presentence report and investigation that was completed. I've considered the particular facts and circumstances of the offenses involved here, the nature of the offenses and of the Defendant's participation; his role in committing these offenses. Obviously it was a bench trial. I sat through and listened to all of the evidence. I am very familiar with what occurred.

**{¶79}** "I've taken into consideration what has been said here in open court by Mr. Hentemann on behalf of his client. The Defendant himself was afforded an opportunity to address the Court, chose not to make a statement, but he was given that chance. Taken into consideration the prosecutor's comments, recommendation being made by the State of Ohio. As well as several family members that were present today and spoke. I also did receive, in addition to the folks that are here today that made statements, but several letters sent to me through email from family members, acquaintances that couldn't be here today from out of state. I've read those. I've taken those into consideration in support of Mr. Ernest.

**{¶80}** "This is all being considered in light of the purposes and principles in felony sentencing which are set forth in 2929.11 of the Ohio Revised Code.

**{¶81}** "As for the factors in 2929.12 that I have to consider in all felony cases, the Court finds that the Defendant did act as a part of organized criminal activity in

19

committing these offenses and that there was a firearm involved in the commission of these offenses, which it's not necessary to have a firearm involved to commit attempted murder, but it was used in this case. That makes the conduct more serious.

{¶82} "As for factors indicating the conduct was less serious, the Court does note that the Defendant was not the principal offender in the commission of at least the attempted murder. In any of the offenses - - well, the attempted murder. The State proceeded on an aiding and abetting theory and that's the basis for the Court's finding of the Defendant's guilt.

{¶83} "As for factors indicating recidivism is more likely, the Court finds the Defendant does have a history of juvenile delinquency adjudications. He's only twenty-one years old now. Just turned twenty-one. Was twenty at the time this was committed. So not much of an adult life. But as a juvenile, he does have juvenile delinquency adjudications, several. For a period of, from 2006 if my memory serves me correctly. Starting in 2006 when he was in and out of juvenile court until 2011. While the offenses aren't – he has a couple felony offenses that he – assault offenses and he was adjudicated as a delinquent child in juvenile court. But what's even more alarming or disturbing is the fact that, by my count, there is at least fourteen probation violations that he had over the years that he was a minor. He started in juvenile court when he was thirteen. There were fourteen probation violations over a period of time that he was a minor for not being able to follow the rules and what was requested or what was ordered of him.

{¶84} "The Court further finds there is no genuine remorse on behalf of the Defendant for his involvement in these incidents. Completely denies having any

20

knowledge of anything that was going on. Simply claims that he was in the wrong place at the wrong time. That's just not what the facts bore out. He may not have been the principal offender, and I recognize that and indicated that, but he was not an innocent bystander being at the wrong place at the wrong time.

{¶85} "* * *

{¶86} "You know, Mr. Ernest, all long you've indicated that you didn't know what was going on and you weren't the main person here. Being in the wrong place at the wrong time. That you didn't aid and [a]bet. Well, that's not true. When you guys backed up the car towards him, the two other guys jumped out, you could have stayed right there. You didn't have to do anything more. But what you did then was take off after Mr. Thomas as he was running down the street, pull in front of him and cut him off as he was being shot at to cut his path, to slow him down. You may not have been the principal offender, but you were involved. You participated. You helped facilitate the attempt to gun Aaron Thomas down. You knew Williams had a gun, a forty-caliber rifle, a semiautomatic rifle. Your claim that you didn't know he had it is – it's not believable. He's posing with pictures of the gun in the apartment right before you guys leave out there, that you're posting on Instagram. And your (sic) claiming you didn't know he had a gun is just ridiculous.

{¶87} "And while you may not have set out that day to cause any problems, you know Michael is coming in that car with you with that forty-caliber semiautomatic rifle. And while he may not have participated in this trial and he may not be here, you and your cohorts, turned this into the wild, wild west on the side streets of Painesville that afternoon and put many individuals in harm's way. And that can't be allowed."

21

{¶88} Furthermore, the trial court stated the following in its sentencing entry:

{¶89} "The Court has also considered the record, oral statements, written statements in support of the Defendant, the pre-sentence report submitted by the Lake County Adult Probation Department of the Court of Common Pleas, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12.

{¶90} "In considering the foregoing, and for the reasons stated in the record, this Court finds that a prison sentence is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and that Defendant is not amenable to an available community control sanction.

{¶91} "The Court finds that Defendant was afforded all rights pursuant to Crim.R. 32 and was given the opportunity to speak before judgment and sentence was pronounced against him.

{¶92} "* * *

{¶93} "The Court has further notified the Defendant, that post release control is mandatory in this case for 5 years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code section 2967.28."

{¶94} Thus, the record reflects the trial court gave due deliberation to the relevant statutory considerations. The court considered the purposes and principles of felony sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12. The court merged allied offenses of similar import. The court sentenced appellant within the statutory ranges under R.C. 2929.14(A). Further,

22

the record reveals the court properly advised appellant regarding post-release control. Therefore, the trial court complied with all applicable rules and statutes and, as a result, appellant's sentence is not clearly and convincingly contrary to law.

{¶95} Appellant's third assignment of error is without merit.

{¶96} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.