[Cite as *State v. Bryant*, 2016-Ohio-4928.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-T-0100** |
| GAYSHAWN BRYANT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00029.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Gayshawn Bryant, appeals from the August 11, 2015 judgment of the Trumbull County Court of Common Pleas, sentencing him for aggravated robbery with a firearm specification. On appeal, appellant asserts the jury's verdict regarding the firearm specification is not supported by sufficient evidence, his conviction for

aggravated robbery is against the manifest weight of the evidence, and the trial court erred in sentencing him to the maximum penalty. For the reasons stated, we affirm.

{¶2} On February 19, 2015, appellant was indicted by the Trumbull County Grand Jury on one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145. Appellant pleaded not guilty at his arraignment.

{¶3} The matter proceeded to a jury trial. Appellee, the state of Ohio, presented four witnesses to testify on its behalf. Appellant testified on his own behalf and presented no witnesses.

{¶4} Appellant and Stephen Mannella ("the victim") had an on-again/off-again friendship for about five years. The victim testified for the state that appellant had severed ties when the victim started dating a previous girlfriend of appellant's.

{¶5} On December 30, 2014, appellant accepted a car ride from Tony Mazi (a friend) to go to the victim's home on Clifton Drive in Howland Township, Trumbull County, Ohio. Also along for the ride were Madeline Hogan (another ex-girlfriend of appellant's), Mufassa Hamad (a friend), and Tavon (appellant's cousin). Hogan testified for the state that appellant discussed "pulling a lick" on the victim, i.e., street slang for robbing someone. Hogan also said appellant talked about beating up the victim and "staining" him, i.e., street slang for shooting someone.

{¶6} According to the victim and Hogan, Mazi pulled in the victim's driveway. The victim went outside and ran after the car. Mazi pulled out and the group left. The group came back. The victim was outside and ran after the car again. They left and

2

Mazi drove to nearby Howland Park. Appellant and Tavon exited the vehicle and Mazi drove off.

{¶7} Appellant and Tavon then headed on foot back to the victim's home. They went to the victim's back door. The victim indicated appellant was carrying a silver gun wrapped in a bandana. Appellant pointed the gun at the victim. The victim tackled appellant and Tavon tackled the victim. Appellant ended up forcing the victim to the ground, face down on his stomach.

{¶8} The victim testified appellant hit him on the back of his head with the gun while demanding to know who else was inside the home. The victim said appellant asked him where "the bitch" was, i.e., appellant's ex-girlfriend. Appellant and Tavon rummaged through the victim's pockets and left with his phone. The victim immediately ran to a neighbor's house and called 911.

{¶9} The next morning, Hogan took appellant to Mazi's residence. Hogan overheard appellant tell Mazi how appellant and Tavon went to the victim's home with a gun, threw the victim on the ground, held a gun to his head, took things out of the victim's pockets, and ran away. Thereafter, the police arrived at Mazi's home.

{¶10} Detective Jeff Edmundson with the Howland Township Police Department ("HTPD") testified for the state that he was involved in the investigation. HTPD arrested appellant at Mazi's home where they found him hiding in a downstairs shower. Officers interviewed appellant after administering a Miranda warning. Officers told appellant he was a suspect in an armed robbery on Clifton Drive. Detective Edmundson indicated appellant denied being on Clifton Drive and denied being involved in a robbery.

**{¶11}** Hogan further testified that appellant, while incarcerated, wanted her to concoct an alibi story that they had been at a local Waffle House restaurant during the robbery. In recorded jail conversations, Hogan challenged appellant about having a gun when he robbed the victim and appellant did not deny having a weapon. (State's Exhibit 9). From jail, appellant repeatedly tried to persuade Hogan to return to the police and recant her story. (State's Exhibits 5 and 8).[1]

**{¶12}** Detective Michael Yanucci with the Trumbull County Sheriff's Office testified for the state regarding his access to Global TelLink, the system that monitors all jail phone visitations, calls, and recordings. Detective Yanucci explained that when an inmate is booked, he or she is given a pin number to make phone calls. In this case, HTPD requested various jail phone calls. Detective Yanucci referenced appellant's jail phone calls from January 2015 (State's Exhibits 2 and 3) and calls made from another inmate's pin number (State's Exhibit 4).[2] Appellant used another inmate's pin on at least one occasion in order to badger Hogan to lie for him without being monitored by police.

**{¶13}** At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

**{¶14}** Appellant took the stand in his own defense. Appellant referenced the rift between himself and the victim. Appellant blamed the rift on the fact that the victim disrespected him by declining to visit him and do drugs while appellant was on house arrest in another matter. Appellant testified the victim flaunted his freedom and

---

1. Exhibits 5 through 9 were edited.

2. Exhibits 2 through 4 were unedited.

appellant took offense. Appellant became so angry that he cut his way out of his house arrest monitoring bracelet in order to go and confront the victim at his home and beat him up. Appellant twice testified that lying to police is an acceptable practice. Appellant admitted that a violent confrontation occurred at the victim's home but insisted that the victim, a "crybaby," initiated it. Appellant denied having a gun and robbing the victim.

{¶15} Appellant did not renew his Crim.R. 29 motion for acquittal at the conclusion of all the evidence.

{¶16} Following trial, the jury found appellant guilty of aggravated robbery with a firearm specification as charged in the indictment.

{¶17} The trial court sentenced appellant to 11 years for aggravated robbery and three years on the firearm specification for a total of 14 years in prison. The court further notified appellant that post-release control is mandatory for five years. Appellant filed a timely appeal and asserts the following assignments of error:

{¶18} "[1.] The jury's verdict convicting the appellant of a firearms specification is not supported by sufficient evidence.

{¶19} "[2.] The appellant's conviction for armed robbery is against the manifest weight of the evidence.

{¶20} "[3.] The trial court erred and abused its discretion by sentencing the appellant to the maximum penalty allowable by law."

{¶21} In his first assignment of error, appellant argues the state did not produce sufficient evidence to prove he brandished and used a firearm in the commission of the aggravated robbery. Appellant contends the firearm he allegedly used was never

5

located nor tested. As such, appellant maintains the state failed to prove the handgun was "operable."

**{¶22}** We note again that appellant did not renew his Crim.R. 29 motion at the conclusion of all the evidence. This court has recognized that "'(a) split of authority exists on whether (an appellant) is permitted to argue insufficiency of the evidence where he has not renewed his Crim.R. 29 motion.'" *State v. Miller*, 11th Dist. Portage No. 2004-P-0049, 2005-Ohio-6708, ¶67. Some districts, including this one, have held that a defendant who fails to renew his Crim.R. 29 motion for judgment of acquittal at the close of all of the evidence in a jury trial does not waive his right to challenge the sufficiency of the evidence on appeal. *See Miller, supra,* at ¶67; *State v. Shadoan*, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, ¶16; *State v. Manso*, 9th Dist. Summit No. 26727, 2014-Ohio-1388, ¶30. However, other districts have held that a defendant who fails to renew his Crim.R. 29 motion for judgment of acquittal at the close of all of the evidence in a jury trial waives his right to challenge the sufficiency of the evidence on appeal. *See State v. Melton*, 141 Ohio App.3d 713, 719 (1st Dist.2001); *State v. Hicks*, 3d Dist. Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶39; *State v. Faggs*, 5th Dist. Richland No. 08-CA-35, 2009-Ohio-1758, ¶22; *State v. Bickley,* 6th Dist. Erie No. E-09-024, 2010-Ohio-1480, ¶30.

**{¶23}** The position that this district has followed is correct. In *State v. Jones*, 91 Ohio St.3d 335, 346 (2001)**,** and *State v. Carter*, 64 Ohio St.3d 218, 223 (1992), the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. In both *Jones* and *Carter*, the Ohio Supreme Court stated that the

defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. *Id; see also State v. Perry*, 11th Dist. Lake No. 2004-L-077, 2005-Ohio-6894, ¶31 ("a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal"); *State v. Lewis*, 11th Dist. Lake No. 2009-L-138, 2010-Ohio-4288, ¶53; *State v. Oliver*, 11th Dist. Portage No. 2010-P-0017, 2012-Ohio-122, ¶80. Because a conviction based on legally insufficient evidence constitutes a denial of due process, *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997), a conviction based upon insufficient evidence would almost always amount to plain error.[3] *See Shadoan, supra,* at ¶16. Accordingly, [removed] appellant has not waived his constitutional right to challenge the sufficiency of the evidence and we will address his first assignment of error on its merits.

{¶24} With regard to a Crim.R. 29 motion, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶25} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

---

3. *Thompkins, supra,* superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).

{¶26} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶27} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*"'

{¶28} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶29} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal

8

unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶30} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra,* paragraph one of the syllabus.

{¶31} In this case, appellant is challenging his conviction for aggravated robbery with a firearm specification in violation of R.C. 2911.01(A)(1) and 2941.145.

{¶32} R.C. 2911.01(A)(1), aggravated robbery, states in part: "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶33} Regarding the firearm specification, R.C. 2941.145(A) provides in part: "[i]mposition of a three-year mandatory prison term upon an offender" shall be made when "the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶34} R.C. 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or

9

combustible propellant [and] includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."

**{¶35}** Although appellant takes issue with the fact that a handgun was never located and tested for operability, this court has stated that "the recovery of a firearm used in a criminal offense is not required to prove that a particular firearm was operable at the time of the crime." *State v. Johns*, 11th Dist. Trumbull No. 2014-T-0036, 2015-Ohio-2455, ¶31. "Rather, the Supreme Court of Ohio has held that 'it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable.'" *Id.*, quoting *Thompkins*, *supra* at 384 ("a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime.") *Thompkins*, *supra* at 385. *See also State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶13 (holding that because "the witnesses testified that the defendant was holding a gun to their heads while they were being robbed of their money and personal effects, which constitutes an implicit threat * * * the State offered sufficient circumstantial evidence that the firearm was operable.")

**{¶36}** In this case, the record establishes that appellant threatened the victim with an operable firearm to facilitate the robbery. As stated, Hogan testified for the state that on the car ride to the victim's house, appellant discussed "pulling a lick" on the

10

victim, i.e., street slang for robbing someone.  Hogan also said that appellant talked about beating up the victim and "staining" him, i.e., street slang for shooting someone.

{¶37}  According to the victim and Hogan, Mazi, the driver of the car, pulled in the victim's driveway.  The victim went outside and ran after the vehicle.  Mazi pulled out and the group left.  The group came back.  The victim was outside and ran after the car again.  They left and Mazi drove to nearby Howland Park.  Appellant and Tavon exited the vehicle and Mazi drove off.

{¶38}  Appellant and Tavon then headed on foot back to the victim's home.  They went to the victim's back door.  The victim indicated appellant was carrying a silver gun wrapped in a bandana.  Appellant pointed the gun at the victim.  The victim tackled appellant and Tavon tackled the victim.  Appellant ended up forcing the victim to the ground, face down on his stomach.

{¶39}  The victim testified appellant hit him on the back of his head with the gun while demanding to know who else was inside the home.  The victim said appellant asked him where "the bitch" was, i.e., appellant's ex-girlfriend.  Appellant and Tavon rummaged through the victim's pockets and left with his phone.

{¶40}  The next morning, Hogan took appellant to Mazi's residence.  Hogan overheard appellant tell Mazi how appellant and Tavon went to the victim's home with a gun, threw the victim on the ground, held a gun to his head, took things out of the victim's pockets, and ran away.  Thereafter, the police arrived at Mazi's home where they found appellant hiding in a downstairs shower.

{¶41}  Hogan further testified that appellant, while incarcerated, wanted her to concoct an alibi story that they had been at a local Waffle House restaurant during the

robbery. In recorded jail conversations, Hogan challenged appellant about having a gun when he assaulted the victim and appellant did not deny having a weapon. From jail, appellant repeatedly tried to persuade Hogan to return to the police and recant her story. Appellant even used another inmate's pin number on at least one occasion in order to badger Hogan to lie for him without being monitored by police.

{¶42} Viewed as a whole, the testimony of the victim and Hogan indicated that appellant had a gun during the commission of the robbery. Such testimony constituted circumstantial evidence upon which a reasonable juror could find that unless the victim cooperated with appellant's demands, appellant intended to shoot him. Based on the foregoing, the jury could infer that appellant was in possession of an operable firearm at the time of the offense, that is "'a deadly weapon capable of expelling projectiles by an explosive or combustible propellant.'" *Johns, supra,* at ¶34, quoting *Thompkins, supra,* at 383; *see, also, State v. Jackson*, 11th Dist. Lake No. 2012-L-061, 2013-Ohio-4846, ¶47-48.

{¶43} Pursuant to *Schlee, supra*, the state presented sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145 were proven.

{¶44} Appellant's first assignment of error is without merit.

{¶45} In his second assignment of error, appellant contends his conviction for aggravated robbery is against the manifest weight of the evidence.

{¶46} This court stated in *Schlee, supra*, at *14-15:

12

{¶47} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶48} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"'" (Citations omitted.) * * *" (Emphasis sic.)

{¶49} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins, supra,* at 387.

{¶50} With respect to the manifest weight of the evidence, the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶51} In reviewing and weighing all the evidence presented, we determine that a jury could reasonably conclude appellant was guilty of the charged offense. The jury heard all of the evidence presented by the state and from its four witnesses, as addressed above, establishing appellant's guilt for aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145. The jury also heard the defense's theory and from appellant himself alleging that he did not rob the victim or have a gun on the date of the incident. The jury also heard appellant testify that it is perfectly acceptable to lie to the police. The jury apparently placed great

weight on and chose to believe the state's witnesses as opposed appellant. *DeHass, supra*, at paragraph one of the syllabus. We cannot say the jury clearly lost its way in finding appellant guilty of the charged offense. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

**{¶52}** Appellant's second assignment of error is without merit.

**{¶53}** In his third assignment of error, appellant maintains the trial court erred in sentencing him to the maximum sentence.

**{¶54}** R.C. 2953.08(G) and the clear and convincing standard should be applied to determine whether a felony sentence is contrary to law. *State v. Ernest*, 11th Dist. Lake No. 2014-L-108, 2015-Ohio-2983, ¶60, citing *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶10; *State v. Drobny*, 8th Dist. Cuyahoga No. 98404, 2013-Ohio-937, ¶5, fn.2; *State v. Kinstle*, 3rd Dist. Allen No. 1-11-45, 2012-Ohio-5952, ¶47; *State v. Cochran*, 10th Dist. Franklin No. 11AP-408, 2012-Ohio-5899, ¶52.

**{¶55}** In reviewing a felony sentence, R.C. 2953.08(G) provides:

**{¶56}** "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶57}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

14

{¶58} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶59} "(b) That the sentence is otherwise contrary to law."

{¶60} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

{¶61} Under H.B. 86, pursuant to the principles and purposes of sentencing, R.C. 2929.11 provides: "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).

{¶62} "Thus, the legislature has given us the tools as well as a mandate to address the issues of keeping dangerous criminals off the street, while balancing Ohio's financial deficits and an already overcrowded prison system." *Ernest, supra,* at ¶67. "However, courts have determined that 'while resource and burdens to the government may be a relevant sentencing criterion, the statute "does not require trial courts to elevate resource conservation above the seriousness and recidivism factors."'" (Citation omitted.)" *State v. Arkenburg,* 11th Dist. Lake No. 2013-L-087, 2014-Ohio-1361, ¶10, quoting *State v. Anderson*, 11th Dist. Geauga No. 2011-G-3044, 2012-Ohio-4203, ¶36. "'Only if the record affirmatively shows that the trial court failed to consider the principles and purposes of sentencing will a sentence be reversed on this basis, unless the

sentence is strikingly inconsistent with relevant considerations.'" *State v. Demeo*, 11th Dist. Ashtabula No. 2013-A-0067, 2014-Ohio-2012, ¶29, quoting *State v. Parsons*, 7th Dist. Belmont No. 12 BE 11, 2013-Ohio-1281, ¶12.

**{¶63}** The guidelines contained in R.C. 2929.12, specifically at (E), state:

**{¶64}** "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

**{¶65}** "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

**{¶66}** "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

**{¶67}** "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

**{¶68}** "(4) The offense was committed under circumstances not likely to recur.

**{¶69}** "(5) The offender shows genuine remorse for the offense."

**{¶70}** Appellant's sentence of 11 years in prison for first-degree aggravated robbery is within the statutory range. *See* R.C. 2929.14(A)(1) ("[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years.")

**{¶71}** At the sentencing hearing, the trial court gave careful and substantial deliberation to the relevant statutory considerations. Specifically, the trial judge stated the following:

{¶72} "[The] Court has considered the overriding principles and purposes of felony sentencing, further considered all relevant seriousness and recidivism factors. The Court finds that the defendant's sentence shall be proportional to his conduct, both as to the institute of crime and to the trial, also the sentence is consistent with similarly situated offenders.

{¶73} "The Court makes the following specific findings: Defendant started his criminal career at the age of 15, being convicted of breaking and entering; has a menacing charge at the age of 16; has a forgery conviction at the age of 17; violation of a protection order and court orders at the age of 17; burglary conviction at the age of 17; another violation of protection order at 18, and finally, this charge, Aggravated Robbery with a Firearm Specification which we're here today for sentencing.

{¶74} "Mr. Bryant, I can tell you this Court was deeply disturbed of you, your conduct before the trial and your conduct during the trial. And most disturbing, your phone calls that you made after the jail are probably the best statements that you made through this entire process, especially the one when your mother tells you, 'You need to tell that bitch to make sure she don't show up at court.' You tell your mother that you've been telling her not to do that. The statement that you made on the recorded jail phone call that you said, 'I'm going to catch a murder case when I get out' because you're going to kill the victim. You called the victim a crybaby, cried when you ran up on him. You said, 'He's dead, bro. I'm really going to hurt him.'

{¶75} "Then you went even further, tried to hide your jail conversations by making them on somebody else's pin number. Then you tried to intimidate the witness, the young lady that testified in this trial, you attempted to intimidate her by telling her,

17

'You don't know anything if you go to court,' and, 'You know I've been waiting to fight that M-effer.'  And you also tell her, 'Your probation officer told you he will stroke you if you know that he puts your hands on it,' in addition to all the other juvenile criminal comments you made about stanging him, licking him and everything else.

{¶76} "Your conduct after this is pretty indicative of your conduct as it was before.  Therefore, the Court has, based on the following findings, finds that there is a mandatory prison sentence in there, and that this is an offense of violence.  The defendant has shown absolutely no remorse whatsoever for the offense, and based on his prior conduct, it's a pretty good indication of what his future conduct would be.  Therefore, the Court must protect the public from the defendant."

{¶77}  Furthermore, the trial court stated the following in its sentencing entry:

{¶78}  "The Court has considered the record, oral statements, and any victim impact statements, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11, and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12.

{¶79}  "The Court finds the following: (1) the Defendant * * * has a lengthy criminal history starting at age 15; (2) the Defendant committed multiple felonies; (3) the Defendant show[s] no genuine remorse; and (4) a prison term is necessary to protect the public and punish the offender.

{¶80}  "* * *

{¶81}  "The Court has further notified the Defendant that post release control is mandatory for five (5) years, as well as the consequences for violating conditions of

post release control imposed by the Parole Board under Revised Code Section 2967.28."

{¶82} Thus, the record reflects the trial court gave due deliberation to the relevant statutory considerations. The court considered the purposes and principles of felony sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12. The court sentenced appellant within the statutory range under R.C. 2929.14(A). Further, the record reveals the court properly advised appellant regarding post-release control. Therefore, the trial court complied with all applicable rules and statutes and, as a result, appellant's sentence is not clearly and convincingly contrary to law.

{¶83} Appellant's third assignment of error is without merit.

{¶84} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.