[Cite as *State v. Hunter*, 2018-Ohio-5325.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-081** |
| MARLON J. HUNTER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000269.

Judgment: Modified and affirmed as modified.

*Charles E. Coulson*, Lake County Prosecutor, *Karen A. Sheppert*, and *Michael A. Barth*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Gregory T. Stralka*, 6509 Brecksville Road, P.O. Box 31776, Cleveland, OH 44131 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Marlon J. Hunter appeals from the judgment entry of the Lake County Court of Common Pleas, entered on a jury verdict, sentencing him to five years in prison for aggravated robbery, and three years on an attendant firearm specification, for a total of eight years in prison. Mr. Hunter contends his conviction on the firearm specification is supported by insufficient evidence, and is against the weight of the evidence. We modify, and affirm as modified.

{¶2}     Late in the afternoon of Christmas Day, 2016, two teenaged boys, M.M. and E.H., were at the latter's house.  They decided to go visit Mr. Hunter.  On arriving at his house, M.M. and E.H. began Snapchating with two girls they knew, M.R. and G.C.  Snapchat is a social media app which allows participants to send pictures and videos to each other.  M.R. sent them a picture of one of her Christmas presents – a large amount of money.  E.H. suggested to M.M. and Mr. Hunter they should rob M.R.

{¶3}     M.M. invited M.R. and G.C. to go to dinner, to which they agreed.  M.M. then contacted another teenaged boy, D.G., asking him to accompany the party.  D.G. was told about the plan to rob the girls.  Shortly thereafter M.M., E.H., and Mr. Hunter got into M.M.'s car, and went to pick up D.G.  M.M. saw Mr. Hunter adjust a handgun which was tucked into his waistband.  The boys remained in contact with the girls as they drove to pick them up in Madison, Ohio.  The boys stopped at a convenience store along the way, to pick up something to smoke.

{¶4}     The girls were unacquainted with Mr. Hunter, so it was decided he should perform the robbery.  They stopped at Madison Township Park, and left Mr. Hunter at the pavilion near the lake.  D.G. saw the clip slip out from Mr. Hunter's gun, forcing him to reinsert it.  The remaining three boys drove to the home of M.R.'s father, where the girls were waiting.  The boys suggested the party go to Madison Township Park to smoke, before looking for a restaurant.  M.M. drove, with E.H. in the front passenger seat, with D.G., M.R., and G.C. in the rear.   On arriving at the park, M.M. parked near the boat docks, which are located near the pavilion.

{¶5}     A tall, young black man, in dark clothing, came down from the pavilion, and went to the front passenger side to the car.  E.H. opened the window, and the newcomer

(Mr. Hunter), asked for a smoke. The boys in the car obliged by letting him join in smoking their cigarillo. After a few minutes of smoking and talking, Mr. Hunter pulled his gun from his waistband, and pointed it at E.H. He yanked E.H.'s chain off, and demanded everyone's phones. Mr. Hunter then pointed the gun at the girls in the back seat. Everyone in the party surrendered their phones, except G.C., who pretended she did not have one. M.R. also gave Mr. Hunter her Christmas gift money, and a gift card she had received. Mr. Hunter then told M.M. to "pull off."

{¶6} M.M. drove the girls to the home of M.R.'s mother. Once home, the shaken M.R. called the police. The boys drove back to the park, to pick up Mr. Hunter. M.M., E.H., and D.G. were given back their phones, and the boys divvied up the items stolen from M.R.

{¶7} The girls gave statements to the police that night. M.M., E.H., and D.G. went to the police December 26, 2016, initially maintaining they, too, were victims of the robbery, before breaking down and telling the truth.

{¶8} January 8, 2017, the police executed a search warrant at Mr. Hunter's house, where they found a loaded .45 caliber handgun belong to Jason Barnett, another occupant of the house. Mr. Hunter was questioned at the police station, and admitted his part in the robbery, stating he was chosen to be the robber since the girls did not know him. However, he denied having used the .45 caliber gun, maintaining he used his B.B. gun.

{¶9} Since Mr. Hunter was 17 at the time, this case commenced in the Lake County Court of Common Pleas, Juvenile Division, with the filing of a complaint January 18, 2017. Thereafter, the state moved to transfer the case to the general division of the

Lake County Court of Common Pleas. Following an amenability hearing, the juvenile court transferred the case by a judgment entry filed March 6, 2017.

{¶10} March 20, 2017, the Lake County Grand Jury returned an indictment in one count against Mr. Hunter, for aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145. March 23, 2017, Mr. Hunter entered a written plea of not guilty. Bond was set at $200,000.

{¶11} The matter came on for jury trial April 18, 2017. M.M., E.H., D.G., M.R. and G.C. all testified for the state. Trial concluded April 19, 2017, and the jury returned a verdict of guilty that day, further finding Mr. Hunter guilty under the firearm specification. The trial court memorialized this in a judgment entry filed that day. Sentencing hearing went forward May 26, 2017.

{¶12} June 22, 2017, Mr. Hunter timely noticed this appeal, assigning two errors. We deal with them in reverse order. The second assignment of error reads: "The jury's decision finding the appellant guilty of the firearm specifications was against the manifest weight of the evidence."

{¶13} In *State v. Bryant*, 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶46-50, we held:

{¶14} "This court stated in [*State v.*] *Schlee* [11th Dist. Lake No. 93-L-082 * * *, 1994 WL 738452 (Dec. 23, 1994] * * *:

{¶15} "'"[M]anifest weight" requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶16} "'"In determining whether the verdict was against the manifest weight of the

4

evidence, '(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *' (Emphasis sic.)

{¶17} "A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" [*State v.*] *Thompkins* [78 Ohio St.3d 380] * * *at 387, * * *.

{¶18} "With respect to the manifest weight of the evidence, the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass,* 10 Ohio St.2d 230, * * * (1967), paragraph one of the syllabus." (Emphasis sic.) (Parallel citations omitted.)

{¶19} In support of the assignment of error, Mr. Hunter argues the state never proved the gun introduced at trial as the robbery weapon, was the gun actually used in the robbery. He points out the state's forensic experts admitted they could not find neither his fingerprints, nor his DNA, on the gun.

{¶20} We are respectfully unconvinced. To be convicted on a firearm specification under R.C. 2941.145(A), the state must prove, "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." In this case, M.M., E.H., D.G., M.R., and G.C. all testified that Mr. Hunter brandished a gun during the robbery. The jury could easily infer the gun found at Mr. Hunter's house was the gun used. Further, as we noted in

5

*Bryant, supra*, at ¶35:

{¶21} "Although appellant takes issue with the fact that a handgun was never located and tested for operability, this court has stated that 'the recovery of a firearm used in a criminal offense is not required to prove that a particular firearm was operable at the time of the crime.' *State v. Johns,* 11th Dist. Trumbull No.2014–T–0036, 2015–Ohio–2455, ¶31. "Rather, the Supreme Court of Ohio has held that "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable."' *Id.*, quoting *Thompkins*, *supra*, at 384 ('a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime.') *Thompkins*, *supra*, at 385, * * *. *See also State v. Clayton,* 9th Dist. Summit No. 26910, 2014–Ohio–2165, ¶13 (holding that because 'the witnesses testified that the defendant was holding a gun to their heads while they were being robbed of their money and personal effects, which constitutes an implicit threat (* * *) the State offered sufficient circumstantial evidence that the firearm was operable.')"

{¶22} Mr. Hunter's conviction under the firearm specification is not against the manifest weight of the evidence. The second assignment of error lacks merit.

{¶23} The first assignment of error reads: "The jury's decision finding the appellant guilty of the firearm specifications was not supported by sufficient evidence."

{¶24} In *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034, 2014-L-042, ¶23, we held: "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32." Consequently, Mr. Hunter's conviction on the firearm specification is supported by sufficient evidence.

{¶25} The first assignment of error lacks merit.

The trial court entered a no contact order between Mr. Hunter and the victims, their families, Mr. Moore, Mr. Green, and Mr. Holly. We modify the sentence by vacating that portion of it. *See, e.g.*, *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶32.

{¶26} The judgment of the Lake County Court of Common Pleas is modified and affirmed as modified.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.